FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HOPE D., | NO. 1:23-CV-3076-TOR |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

BEFORE THE COURT is Plaintiff's Appeal of the Social Security Commissioner's Denial of Title XVI Benefits (ECF No. 14). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the order of the Social Security Commissioner is affirmed.

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

1    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

2    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

3    *Sanders*, 556 U.S. 396, 409-10 (2009).

4                    **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

5            A claimant must satisfy two conditions to be considered "disabled" within

6    the meaning of the Social Security Act.  First, the claimant must be unable "to

7    engage in any substantial gainful activity by reason of any medically determinable

8    physical or mental impairment which can be expected to result in death or which

9    has lasted or can be expected to last for a continuous period of not less than 12

10   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

11   impairment must be "of such severity that [he or she] is not only unable to do [his

12   or her] previous work[,] but cannot, considering [his or her] age, education, and

13   work experience, engage in any other kind of substantial gainful work which exists

14   in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

15          The Commissioner has established a five-step sequential analysis to

16   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

17   416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

18   activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

19   gainful activity," the Commissioner must find that the claimant is not disabled.  20

20   C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4    "any impairment or combination of impairments which significantly limits [his or

5    her] physical or mental ability to do basic work activities," the analysis proceeds to

6    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

7    this severity threshold, however, the Commissioner must find that the claimant is

8    not disabled.  *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10   several impairments recognized by the Commissioner to be so severe as to

11   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

12   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits.  20 C.F.R. § 416.920(d).

15   If the severity of the claimant's impairment does meet or exceed the severity

16   of the enumerated impairments, the Commissioner must pause to assess the

17   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite his or her limitations (20 C.F.R. §

20   416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## BACKGROUND

This matter has been pending before various tribunals since 2012. Plaintiff initially filed an application for Title II disability and disability insurance benefits and Title XVI supplemental on November 6, 2012, with an alleged onset date of July 1, 2001. Administrative Transcript ("Tr.") ECF No. 9 (1-20) at 1497. Both applications were denied initially and upon reconsideration. Tr. 1497. At a hearing before an ALJ on May 23, 2013, Plaintiff amended her alleged onset date to August 1, 2007. *Id*. This new alleged onset date called into question Plaintiff's eligibility to receive benefits under Title II as her record indicated she was insured through September 30, 2005, and thus almost two years outside of coverage. *Id*. At an October 27, 2014, hearing, Plaintiff voluntarily withdrew her request for a hearing as it pertained to Title II. *Id*. On October 31, 2014, an ALJ issued a decision dismissing Plaintiff's Title II claim and found her to not be disabled. Tr. 1498. On December 21, 2015, the Appeals Council remanded this decision for a new hearing. *Id*.

During the first remand hearing on May 23, 2017, the Plaintiff alleged a new onset date of November 1, 2014. *Id*. On October 4, 2017, the ALJ issued a new finding that Plaintiff was not disabled and dismissed a hearing request for benefits

under Title II.  *Id*.  The Appeals Counsel subsequently denied review of the 2017 decision, and Plaintiff appealed to the District Court for the Eastern District of Washington.  *Id*.  On June 14, 2019, pursuant to a stipulated motion to remand for further proceedings, the District Court returned the Commissioner to reevaluate: (1) the Plaintiff's impairment at step two; (2) the medical opinion evidence as a whole (3) the subjective testimony; (4) Plaintiff's residual functional capacity; and (5) to obtain a supplemental vocational expert opinion if necessary.  Tr. 926-27. The appeals counsel then remanded the matter to an ALJ for a new hearing.  Tr. 935-37.

During a May 28, 2020, hearing before an ALJ, Plaintiff once again amended the date of onset to November 6, 2012.  Tr. 858.  On June 9, 2020, the ALJ issued a decision finding Plaintiff not disabled and dismissed the Title II claims.  Tr. 870-71.  Plaintiff subsequently appealed to the District Court, which granted a stipulated remand request and returned the matter to Commissioner for further proceedings on May 28, 2021.  Tr. 1580-81.  On April 19, 2022, per the decision of the District Court, the Appeals Council then vacated the prior decision and remanded to an ALJ to: (1) evaluate the Plaintiff's exertional limitations; (2) further consider of Plaintiff's use of an assistive device as it relates to Plaintiff's residual functional capacity ("RFC"); (3) consider Plaintiff's cholinergic urticaria; (4) give further consideration to treating, non-treating, and non-examining source

opinions and explain the weight given to each; (6) give further consideration to whether Plaintiff has past relevant work she can perform; and (7) to obtain an additional vocational expert opinion if necessary.  Tr. 1584-86.

### ALJ's FINDINGS

The ALJ held a new hearing on March 21, 2023, and Plaintiff alleged on onset date of November 6, 2012, and noted a protective application filing for Title XVI supplemental security income on the same day.  Tr. 1499.  Additionally, Plaintiff again withdrew her request for a hearing for Title II benefits, and thus the ALJ only considered her application for Title XVI supplemental security income. *Id*.

In a decision issued on April 4, 2023, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2005.  Tr. 1501.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged date of onset. *Id*.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; right shoulder dysfunction; left knee arthritis; migraine headaches; obesity; chronic obstructive pulmonary disease ("COPD"); affective disorder; and anxiety disorder. *Id*.  Further, the ALJ found that the Plaintiff's cholinergic urticaria was not a "severe" impairment because it would have no more than a minimal impact on her ability to perform work, and

1   providers in the record had noted that her diagnosis was "under control."  Tr. 1502.

2   The ALJ referred to "other physical symptoms and complaints," which appear in

3   the record, including memory issues and hearing loss, but found them to be too

4   sporadic to be considered "severe."  *Id*.  The ALJ ultimately found that, since

5   November 6, 2012, Plaintiff's impairments, both in isolation and when considered

6   together, do not medically equal impairments listed in 20 CFR Part 404, Subpart P,

7   Appendix 1.  *Id*.  Specifically, the ALJ found that Plaintiff's degenerative disc

8   disease imaging studies produced no evidence of nerve root compromise or

9   compromise of the equina.  *Id*.  As to Plaintiff's right shoulder impairment and left

10  knee osteoarthritis, the ALJ found that she is still able to use her left upper

11  extremity to carry out tasks, even considering the use of a single point cane.  *Id*.

12  The ALJ determined that there is no evidence in the record to support Plaintiff's

13  COPD impairment and made similar findings as to Plaintiff's migraines and

14  obesity.  Tr. 1502-03.

15      The ALJ also considered Plaintiff's mental impairments under paragraph B

16  and found that Plaintiff would have no limitation in understanding, remembering,

17  or applying information; a moderate limitation in interacting with others; a mild

18  limitation in concentrating, persisting, or maintaining pace; and no limitation in

19  adapting or managing oneself.  Tr. 1503.  As Plaintiff did not reach a "marked" or

20  "extreme" limitation, the ALJ found paragraph B to be unsatisfied.  Tr. 1504.

At step three, the ALJ determined that, since November 6, 2012, Plaintiff had the residual function capacity to carry light work as defined in 20 CFR 416.967(b) with a limitation that she cannot perform frequent overhead reaching with the right upper extremity nor frequent stooping and kneeling; occasional crouching; can never crawling or climbing ladders, ropes, or scaffolds; must avoid concentrated temperature extremes; and must maintain superficial and occasional contact with the general public. Tr. 1504. The ALJ stated that this decision was based on the requirements for medical evidence and other evidence as set forth in 20 CFR 416.929 and Social Security Ruling 16-3p, as well as opinion evidence requirements in 20 CFR 416.927. Tr. 1505.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record. Tr. 1505. Specifically, the ALJ determined that the record did not support the level of physical limitation Plaintiff alleges. *Id.* In addition to a series of test and exams conducted between 2013 and 2022, the ALJ also pointed to the fact that Plaintiff has been prescribed aids and medication for her impairments and noted that Plaintiff's mention of her use of a cane to get around the house and walker to go outside during the March 2023 hearing was taken into account as part of the RFC determination. Tr. 1506.

As to Plaintiff's mental health impairments, the ALJ determined that the record reflected that her treatment for anxiety and depression has resulted in their stabilization.  Tr. 1506-07.  Plaintiff had been discharged from mental health care at Comprehensive Healthcare in August 2018, and all treatment was subsequently undertaken by her primary care provider.  Tr. 1507.  Additionally, the ALJ took into account the fact that Plaintiff has moved away from a combination of therapy and medication to treat her mental health impairments, and now is solely using medication as a treatment.  *Id*.  The ALJ also opined that the Plaintiff's history of raising her own children, as well as caring for children who were not her own, in combination with daily activities, do not support the level of impairment alleged.  Tr. 1507-08.

Regarding the medical opinions on record, the ALJ stated that "I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources."  Tr. 1508.  In turn, the ALJ gave "significant weight" to the State agency psychological consultants, Dr. Christmas Covell and Dr. Bruce Eather, having found their opinions from 2013 to be consistent with the record as whole and though non-examining, were based on a thorough review of the evidence provided.  Tr. 1508-09.  The ALJ also gave "significant weight" to the opinion of Dr. John Kwock, having found that his testimony in 2017 about Plaintiff's abilities

1   to perform light work with limitation was supported by the record and his

2   expertise.  Tr. 1509.  The ALJ gave "little to no weight" to the opinion of treating

3   physician Dr. Duane Teerink, having found his "checkbox" report completed June

4   2014 failed to provide objective support for his findings, and that his treatment of

5   Plaintiff from 2007 through 2014 lacks a longitudinal view.  *Id*.  The ALJ also

6   gave "little to no weight" to the opinion of ARNP Esmeralda Chavez, having

7   found her "checkbox" report also lacked a longitudinal view.  Tr. 1509-10.

8   Likewise, the ALJ gave "little to no weight" to the assessment of Melissa Belding

9   in another "checkbox" format, as her findings of functional ability were not

10  supported by objective testing, nor consistent with the record.  Tr. 1510.

11          At step four, the ALJ determined that Plaintiff had no past relevant work per

12  20 CFR § 416.965.  Tr. 1510.

13          At step five, the ALJ found that prior to October 22, 2022, considering

14  Plaintiff's age, education, work experience, RFC, and testimony from a vocational

15  expert, there were jobs that existed in significant number in the national economy

16  that she could have performed.[1]  Tr. 1510.  After October 22, 2022, the ALJ

17  determined that Plaintiff was disabled.  *Id*.

18  _____

19  [1]  On October 22, 2022, Plaintiff's age category changed from a "younger

20  individual" (age 18-49) to an "individual of advanced age."  Tr. 1510.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 12

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for Title XVI supplemental security income.  Plaintiff raises the following issues on review:

    A. Whether the ALJ reversibly erred by not properly assessing all of Plaintiff's impairments.

    B. Whether the ALJ reversibly erred by not properly assessing the opinion evidence.

    C. Whether the ALJ reversibly erred by not properly assessing Plaintiff's subjective complaints.

DISCUSSION

**A. Whether the ALJ erred by not addressing Plaintiff's fibromyalgia or rheumatoid arthritis at step two.**

Plaintiff contends that the ALJ failed to account for her fibromyalgia, seronegative rheumatoid arthritis, and carpal tunnel syndrome.  ECF No. 14 at 4.  Specifically, Plaintiff asserts that the ALJ erred by not considering the extensive symptoms that result from fibromyalgia which contributes to the other impairments, and that had it been considered, would have contributed to a finding of disability.  *Id*. at 6.

At step two of the sequential evaluation process, the ALJ considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  Step two is "a de minimis screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  While the ALJ need not discuss *all* evidence presented, but she must explain why "significant probative evidence has been rejected."  *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)).

Here, Plaintiff assigns fault to the ALJ for not addressing fibromyalgia, rheumatoid arthritis, or carpal tunnel syndrome at step two of the analysis.  As a preliminary matter, it appears that the ALJ did in fact reference Plaintiff's rheumatoid arthritis and fibromyalgia in the decision and classified both as not severe per the regulation:

> Other physical symptoms and complaints appear in the records from time to time (See e.g., Exhibits **10F**; 13F/1-2; 23F; 27F; **36F**; 39F), but these mild or transient conditions were of short duration, controllable, and without significant effect on her ability to perform work activities.

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 14

1       I therefore find that any such alleged impairment is "not severe" under

2   the regulations.

3   Tr. 10 (emphasis added).

4       Exhibit 10F discusses imaging Plaintiff received in 2014 for pain in her right

5   finger with unremarkable results, which the Court assumes is in reference to the

6   either the rheumatoid arthritis or the carpal tunnel syndrome that Plaintiff alleges.

7   ECF No. 9-7 at 201.  Exhibit 36F notes that Plaintiff has a medical history of

8   fibromyalgia and rheumatoid arthritis, but the overall substance of the record is

9   centered around sleep related impairments.  ECF No. 9-19 at 207, 217.  While the

10  ALJ is not required to address every medical record available, evidence indicating

11  Plaintiff has received treatment for rheumatoid arthritis and fibromyalgia is

12  available on the record and were also addressed in the prior ALJ findings as non-

13  severe impairments.

14      As to Plaintiff's alleged impairment of carpal tunnel syndrome, the Court

15  concludes that the ALJ did not err in excluding it because Plaintiff did not carry

16  her burden of producing evidence that it causes a significant impairment.  *See Ford*

17  *v. Saul*, 950 F.3d 1141, 1140 (9th Cir. 2020); *see also Carmickle v. Comm'r of*

18  *SSA*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (the ALJ did not err at step two by

19  failing to classify carpal tunnel as a severe impairment where the medical record

20  did not establish work-related limitations from this impairment); *see also*

1   *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). Here, there is little

2   reference to the impact Plaintiff experiences as a result of carpal tunnel on the

3   record. While there is discussion about pain and stiffness, as well as reference to

4   some treatment received and evidence of "mild to moderate carpal tunnel," nothing

5   detailed specifically how carpal tunnel would impact her ability to work. ECF

6   Nos. 9-13 at 134, 9-19 at 5.

7       Substantial evidence supports the ALJ's findings with respect to these

8   complaints.

9   **B. Whether the ALJ reversibly erred by not properly assessing the opinion**

10      **evidence.**

11      Plaintiff contends that the ALJ incorrectly applied the post-March 27, 2017,

12  standard when discussing the weight given to both the medical and non-medical

13  opinion evidence. Specifically, Plaintiff faults the ALJ both for citing to 20 C.F.R.

14  § 416.920c when discussing weight to give nonmedical opinions and stating that

15  "no deference or specific evidentiary weight, including controlling weight, would

16  be given to any medical source," which is reflective of the post March 27, 2017,

17  standard. ECF No. 14 at 16; 20 C.F.R. § 416.920c(a).

18      Substantial evidence supports the ALJ's determination to give significant

19  weight to the State agency psychological consultants, Dr. Covell and Dr. Eather for

20  their review of the record in February and April of 2013. Tr. 1508-09. The ALJ

found that their opinions were consistent with the record at that time.

Additionally, the ALJ gave significant weight to medical expert Dr. Kwock for his testimony at the May 2017 hearing based on the evidence at that time. His conclusions were supported by the records and consistent with the evidence. Tr. 1509.

The ALJ properly gave little weight to Dr. Teerink's opinion of June 2014 as he completed a check-box form which did not cite to any specific clinical or objective findings to support his assertions. Tr. 1509. While he treated Plaintiff from March 2007 to May 2014, only the last year and a half were relevant to a disability determination. The Ninth Circuit has held that insufficiently explained opinions could be rejected and recently upheld that ruling. "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion. While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

The ALJ gave little to no weight to Nurse Chavez' check-box report on June 2022. Nurse Chavez only saw Plaintiff four times and provided some treatment records. Her opinion did not provide a longitudinal record of Plaintiff's

impairments or treatment.

The ALJ properly rejected the opinions of therapist Ms. Belding. Ms. Belding completed a check-box form in August of 2014 without any citation to objective testing of Plaintiff's functional abilities nor mental status. Tr. 1510. Ms. Belding's opinions were inconsistent with the record and lacked objective support.

The ALJ properly evaluated the lay witness evidence. The ALJ noted that their evidence did not provide anything not already considered in Plaintiff's own testimony. Tr. 1508. Any error in evaluating lay witness testimony is "harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina*, 674 F.3d at 1122.

**C. Whether the ALJ reasonably considered Plaintiff's subjective complaints.**

Plaintiff asserts the ALJ improperly rejected Plaintiff's subjective symptom testimony. ECF No. 14 at 5. An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective medical and other evidence in the claimant's record. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

"The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. When evaluating the intensity,

persistence, and limiting effects of a claimant's symptoms, the following factors

should be considered: (1) daily activities; (2) the location, duration, frequency, and

intensity of pain or other symptoms; (3) factors that precipitate and aggravate the

symptoms; (4) the type, dosage, effectiveness, and side effects of any medication

an individual takes or has taken to alleviate pain or other symptoms; (5) treatment,

other than medication, an individual receives or has received for relief of pain or

other symptoms; (6) any measures other than treatment an individual uses or has

used to relieve pain or other symptoms; and (7) any other factors concerning an

individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7-8; 20 C.F.R. § 416.929(c)(3).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to

cause the alleged symptoms; however, Plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely

consistent with the evidence. Tr. 1505. In arriving at this conclusion, the ALJ

considered several of the factors described above.

The ALJ found that the objective clinical findings show some limitations,

but they are inconsistent with the extreme limitations alleged by the Plaintiff. The

record showed normal gait and intact lower extremity strength. Tr. 1505.

Additionally, objective findings and Plaintiff's course of treatment are inconsistent

with debilitating knee and back impairments as alleged by Plaintiff. Tr. 1506. The

ALJ found that Plaintiff's other conditions, obesity, migraine headaches, and COPD contribute to her limitations but do not prevent her from working. *Id.* The ALJ repeatedly cited to the record to support these findings. Plaintiff's mental health symptoms are largely stable and not as serious as she alleges. Again, the ALJ cited to the records to support this finding. Tr. 1507. Finally, the ALJ recounted Plaintiff's daily activities, household chores, and caring for her children and her sister's children. Tr. 1507-08.

Clear and convincing evidence supports the ALJ's conclusions.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief, ECF No. 14, is **DENIED**.

2. The Commissioner's Brief, ECF No. 16, is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

DATED December 12, 2023.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION ~ 21